# UNITED STATES DISTRICT COURT
## for the
### Southern District of California



FILED

SEP 13 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Pho-Ever, 120 N. El Camino Real, Encinitas, California )
)
)

Case No.

'19 MJ 3940

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-2

located in the     Southern     District of     California     , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. Section 2113 | Bank Robbery |
| Title 18 U.S.C. Section 924(c) | Brandishing a Firearm During a Crime of Violence |

The application is based on these facts:
Specified in the attached Affidavit of Special Agent Ian Pennington

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ian Pennington, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   9/7/9

*Judge's signature*

City and state: San Diego, California                    Hon. Jill L. Burkardt, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

## Description of Premises to be Searched

The premises at 120 N. El Camino Real, Encinitas, CA 92024 (**Subject Address 2**) is a business located in strip mall. The letters Pho-Ever are in green above the business. It contains white stucco and a tile roof. The numbers "120" are in white above the entrance door. Subject Address 2 is depicted below.



## Attachment B
## Items to be Seized

Authorization is sought to search for and seize evidence that relates to violations of Title 18 U.S.C. 2113(a) and 924(c). Items to be seized include the following:

a. U.S. Currency
b. Jeans, yellow dress, head band, latex glove, sunglasses, blue long sleeved shirt
c. Brown leather bag
d. Wig
e. Revolver style gun and ammunition
f. Cellular telephone belonging to Tam Dang
g. Articles of personal property evidencing the identity of person(s) occupying, possessing, residing in, owning, frequenting or controlling the residence and premises
h. Records of plan to rob a bank(s)

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Ian Pennington, being duly sworn, hereby state as follows:

## I. INTRODUCTION

1. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since September 2014. As a Special Agent with the FBI, I have conducted numerous criminal investigations into violent criminal matters. I currently serve on the San Diego Violent Crimes Task Force where I investigate various crimes that include, but are not limited to, commercial robberies, bank robberies, kidnappings, extortions, and assaults on federal officers. Prior to being assigned to the San Diego Violent Crimes Task Force, I completed twenty-two (22) weeks of training at the FBI Academy in Quantico, Virginia (VA). During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, forensic techniques, and a variety of other subjects.

3. Prior to becoming a Special Agent I joined the FBI in 2008 as an Evidence Control Technician (ECT) in the Kansas City Field Office. As an ECT and a member of the Evidence Response Team, I was trained to process crime scenes, collect evidence and conduct complex searches.

4. My experience as a Special Agent and FBI employee, my participation in a multitude of investigations, and my interactions with other

agents, as other state and local law enforcement officers familiar with violent crimes, as well as my training form the basis of the opinions and conclusions set forth below, which I have drawn from the facts set forth herein. The facts are set forth in substance not verbatim, unless otherwise noted.

5. This affidavit supports an application for warrants to search the premises located at:

    a. 608 Allison Lane, San Marcos, California (**Subject Address 1**); and

    b. Pho-Ever, 120 N. El Camino Real, Encinitas, California (**Subject Address 2**);

as described in Attachments A-1 and A-2, respectively, for items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 18, United Code, Section 2113(a) (Bank Robbery), and Title 18, United Code, Section 924(c) (Brandishing a Firearm During a Crime of Violence), as described in Attachment B. As detailed herein, there is probable cause that Tam Dang resides at the **Subject Address 1** and robbed a bank at gunpoint located in close proximity a restaurant he owns and runs, located at **Subject Address 2**.

6. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this

investigation.

## FACTS SUPPORTING PROBABLE CAUSE

### *Introduction*

7. The FBI is investigating an armed bank robbery that occurred on September 7, 2019, at approximately 12:58 PM, at the U.S. Bank located at 131 North El Camino Real, Encinitas, California (hereafter "U.S. Bank," specifically referring to the Encinitas branch), in the Southern District of California.

8. At the times of the offense, the United States currency belonging to, or in the care, custody, management or possession of U.S. Bank were insured by the Federal Deposit Insurance Corporation (FDIC).

### *The Robbery*

### *The Armed Robbery of U.S Bank on September 7, 2019*

9. Based on interviewing witnesses and reviewing surveillance footage, investigators learned, on September 7, 2019, at approximately 12:58 p.m., a lone Asian male (hereinafter referred to as the "robber") entered and robbed U.S. Bank. The robber first pointed a handgun at two employees at their teller station and stated, "No, don't move. Don't pull the alarm. You come with me, and if the cops show up, we all die."

10. The robber directed the two bank employees to the front door of the bank at gunpoint. The robber had one of the employees lock the front door.

11. At gunpoint, the robber directed the two bank employees back to their teller station. The robber and the two bank employees walked behind the teller counter. The robber dropped a brown leather bag on the floor. The robber stated, "Give me all the money." The two bank employees opened their teller drawers, emptied out their top drawers, and placed the money in the brown leather bag.

12. The robber stated, "Come with me." At gunpoint, the robber walked

3

the two bank employees to the safe deposit box room. The door in the safe deposit room shut behind them as they entered the room, The robber asked one of the employees to unlock the door.

13. The robber then pointed to the vault. One of the bank employees opened the safe in the vault and began to empty stacks of $100, $50 and $20 bills into the bag. The employee asked the robber if he wanted the smaller bills. The robber stated, "Give me everything".

14. The robber then stated, "Let's go." At gunpoint, the robber walked both bank employees back to behind the teller counter. The robber pulled a chair and sat down in the chair. The robber stated, "This is saving your lives. You're going to see your families tonight." The robber pulled at a plastic bag that contained a roll of duct tape. The robber had one of the bank employees tie the other employee up with the duct tape. Once the employee was restrained the other employee with the duct tape the employee handed the duct tape back to the robber. The robber sat his gun down on the table then proceeded to tie up the other employee with the duct tape. The robber again stated, "This is saving your lives. You're going to see your families tonight."

15. The robber grabbed the keys to the bank's front door and proceeded to the door with the bag of money. As the robber was attempting to exit the bank a customer was attempting to gain entry into the bank. The robber stayed in the bank until the customer left. Once the customer left in their car, the robber unlocked the front and exited the bank, locked the front door with the keys, and fled on foot.

16. The robber was described as an Asian male, in his 50s to early 60s, standing approximately 5'5" to 5'6", with a thin build. He wore a long brown wig with a headband, sunglasses over reading glasses, a yellow dress over jeans. He carried a black revolver.

***Identification of the robbery as Tam Dang.***

17.     Following the robbery FBI Agent and Detectives from the San Diego Sherriff's Department responded to the robbery. FBI Agents interviewed the victim witnesses at the US Bank. Both employees identified the robber as Tam Dang. The victim teller had her hand on the panic alarm as the robber entered the bank due to the robber's strange attire she believed she was about to be robbed. As the robber approached her teller station she took her hand off the panic alarm because she recognized the robber as repeat customer Tam Dang. The victim teller stated that Tam Dang comes into the bank at least once a week to withdraw or deposit cash. The victim teller knew Tam Dang to be the owner of the **Subject Address 2**. The victim teller also noted that the robber had the same distinctive and repetitive habit of clearing his throat as Tam Dang. The victim teller also noted she could see Dang's long dark and grey hair under his wig.

18.     FBI Agents showed the victim teller a photo array. The victim teller positively identified the photograph of Tam Dang as the robber. The victim teller was 9.7 out of 10 the Tam Dang was the robber.

19.     Agents interviewed the other victim teller at the bank. The victim teller also stated he recognized the robber as Tam Dang. He stated that Tam Dang comes into the bank at least once a week. He also knew Tam Dang to be the owner of **Subject Address 2.**

20.     Law enforcement database search for vehicles registered to Tam Dang reveled a 2011 Honda California license plate 7EGL711, was registered to Tam Dang. The vehicle is also registered to the **Subject Address 1**. On September 7, 2019, Agents observed the vehicle parked in the driveway of the **Subject Address 1** and open source databases indicated both that Tam Dang is the owner and/or resides at **Subject Address 1** and owns **Subject Address 2**. Further, in 2016, police spoke with Tam Dang at **Subject Address 2** after he

reported a burglary.

21. Law Enforcement databases also revealed that in August of 2019 Tam Dang purchased a revolver in San Marcos, California.

22. Based upon my experience and training, consultation with other law enforcement officers experienced in bank robbery investigations, and all the facts and opinions set forth in this affidavit, I know that individuals involved in a bank robbery often maintain the following items in their residences or vehicles:

    a. clothing, and materials used during the bank robbery, along with any proceeds attained from the robbery and bank materials taken from the robbed bank;

    b. records of their plans to rob banks, and records of any reporting of the robberies by the press to the public;

    c. articles of personal property evidencing the identity of person(s) occupying, possessing, residing in, owning, frequenting or controlling the residence and premises;

    d. cellular telephones, which they use to plan and/or carryout the robberies and also may hold digital evidence of the robbery like photographs or geolocation data;

    f. photographs of their associates and stolen cash proceeds from bank robberies; and

    g. firearms, ammunition, and body armor.

23. In this case Tam Dang owns a small restaurant, **Subject Address 2**, in close proximity to the U.S. Bank, which based on my training and experience would make it an ideal staging area before the robbery or place to flee to after the robbery, making it a likely location to hold these above referenced items.

//
//

1  //
2  //
3  //
4  //
5  //

## IX. CONCLUSION

24. Based on the foregoing, I believe there is probable cause to believe items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 18, United Code, Section 2113(a) and Title 18, United Code, Section 924(c), as described in Attachment B, will be found at the entities to be searched, as provided in Attachment A-1 and A-2.

IAN PENNINGTON
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this 7th day of September 2019.

THE HONORABLE JILL L. BURKHARDT
United States Magistrate Judge

AO 93 (Rev. 12/09) Search and Seizure Warrant

NOT FOR PUBLIC VIEW

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>SIM Card<br>ICCID: 8952020918614471723 | ) ) ) ) ) ) Case No.   '19 MJ 3939 |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ____Southern____ District of ____California____
*(identify the person or describe the property to be searched and give its location):*
See Attachment A-2.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before   9/27/19
*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Hon. Linda Lopez
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   ☐ for _____ days *(not to exceed 30)*.
   ☐ until, the facts justifying, the later specified date of _____.

Date and time issued:   9/13/19 @ 8:30 am       _____[signature]_____
                                                   *Judge's signature*

City and state:   San Diego, CA                  Hon. Linda Lopez, U.S. Magistrate Judge
                                                   *Printed name and title*

AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
Executing officer's signature

_____
Printed name and title

## **ATTACHMENT A-2**
PROPERTY TO BE SEARCHED

The following property is to be searched:

> SIM Card
> ICCID: 8952020918614471723
> (**Target Device 2**);

The **Target Device 2** is currently in the possession of the Department of Homeland Security at 880 Front Street, San Diego, California 92101.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the items described in Attachments A-1 through A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and/or temporary or permanent files. The seizure and search of the cellular/mobile telephone and SIM cards shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone and SIM cards will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 4, 2019, to July 4, 2019:

a. tending to indicate efforts to import methamphetamine or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 952 and 960.**